UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

FAYSAL GALAB, :
:
      Petitioner :
:
    v. : CIVIL NO. 4:CV-06-1027
:
KAREN HOGSTEN, : (Judge McClure)
:
      Respondent :

## **MEMORANDUM**

April 26, 2007

**Background**

This *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 was initiated by Faysal Galab ("Petitioner") regarding a loss of good time credits which was imposed during his prior detention at the Allenwood Federal Correctional Institution, White Deer, Pennsylvania ("FCI-Allenwood").[1] Named as Respondent is FCI-Allenwood Warden Karen Hogsten.

Galab claims that he was denied due process during an FCI-Allenwood disciplinary proceeding. Specifically, Petitioner states that during October, 2005, he

---

[1] Petitioner is presently confined at the Federal Correctional Institution, Terre Haute, Indiana ("FCI-Terre Haute").

telephoned a family member from his FCI-Allenwood housing unit and asked the relative to "order copies of the Qur'an, the revealed text of Islam, to be sent to Petitioner in the institution."  Record document no. 1, ¶ III (2).  Galab indicates that in accordance with his beliefs, he intended to donate the copies to the FCI-Allenwood Chapel library so they could be used by prisoners who were unable to purchase their own copies.  One of the books requested was an Albanian translation of the Qur'an.  The publications were confiscated upon their arrival at the prison on November 1, 2005.

On November 3, 2005, Galab was issued a disciplinary report alleging that he violated Code 297, which prohibits inmate use of the telephone for abuses other than criminal activity.  <u>See</u> Record document no. 9, Exhibit 1-B.  The misconduct charge alleged that between October 10-28, 2005, Galab employed a telephone in his housing unit to order four (4) religious books, including a prohibited publication, <u>The Noble Qur'an</u> (the aforementioned Albanian translation), for distribution to other inmates without prior permission.  A hearing on the charge was conducted by Disciplinary Hearing Officer ("DHO") Bittenbender on November 10, 2005.  During the hearing, Petitioner acknowledged that he had employed a telephone to obtain the books without obtaining prior permission from the prison Chaplain.  The DHO found Petitioner guilty of the charge on the grounds that the evidence, including Galab's own admission, established that he had used a telephone in his housing unit to

2

"arrange the delivery of Muslim books, specifically The Noble Qur'an." Record document no. 9, Exhibit 1-E. Furthermore, The Noble Qur'an had been identified by the FCI-Allenwood Chaplain as being contraband. Galab was sanctioned to an eighty-seven (87) day loss of good time credit, thirty (30) days of disciplinary segregation, as well as an eighteen (18) month loss of visitation and telephone privileges.

Petitioner asserts that his actions did not rise to the level of a Code 297 violation. His petition notes that none of the books he requested, including the Albanian translation, had been restricted or otherwise considered to be contraband by the Bureau of Prisons ("BOP"). Moreover, even if the Albanian translation was deemed contraband, the FCI-Allenwood staff had not informed the inmate population of said designation or that inmates needed to obtain prior permission from the prison Chaplain in order to donate books to the chapel library. In addition, Galab asserts that the inmate population was never given notice of the charged offense, Code 297, a high security level telephone abuse violation. Furthermore, donating books without prior permission does not rise to the level of abuse required for a Code 297 violation. He concludes that his disciplinary proceedings also substantially burdened the exercise of his religious beliefs in violation of the First Amendment.

By Order dated January 22, 2007, the Respondent was directed to file a supplemental response which included the Table listings from BOP regulations for alternative disciplinary infractions referenced in the response. Based on the exhibits

3

accompanying Respondent's supplemental response , the BOP has created different level offenses for telephone related abuse. <u>See</u> Record document no. 16. Specifically, Code 197 (greatest severity) is used for conduct involving use of the telephone to further criminal activity. Forfeiture of earned statutory good time or non-vested good conduct time (100%) are among the permissible sanctions for a Code 197 violation.

As noted earlier Code 297 (high severity) involves use of the telephone for abuses other than criminal activity. Examples listed for Code 297 conduct include talking in code, circumventing telephone monitoring procedures, use of another prisoner's PIN number, and using credit card numbers to place telephone calls. Available sanctions include forfeiture of earned statutory good time or non-vested good conduct time to a lesser extent (up to sixty (60) days) than that provided for Code 197 conduct.

Code 397 (moderate severity) likewise involves use of the telephone for abuses other than criminal activity. The listed samples of code 397 conduct include conference calling, three way calling, and providing false information for preparation of a telephone list. Forfeiture of up to thirty (30) days of statutory good time or non-vested good conduct time is a permissible sanction.

Code 497 (low moderate severity) also is for telephone abuse other than criminal activity. Examples of Code 497 offenses include exceeding the 15 minute time limit for telephone calls, using the telephone in an unauthorized area, and

placing an unauthorized person on the telephone list.  Loss of good conduct time credit (1-7days) is a permissible sanction for second or successive Code 497 offenses.

Also ripe for consideration is the Petitioner's motion seeking the issuance of sanctions against the Respondent under Federal Rule of Civil Procedure 11.  See Record document no. 18.  The Petitioner asserts that counsel for the Respondent should be sanctioned because the response contains a material misrepresentation, namely that The Noble Qur'an has been deemed to be contraband by the BOP.

**Discussion**

It is well-settled that a habeas corpus petition may be brought by a prisoner who seeks to challenge either the fact or duration of his confinement in prison.  Preiser v. Rodriguez, 411 U.S. 475 (1973), Telford v. Hepting, 980 F.2d 745, 748 (3d Cir.), cert. denied, 510 U.S. 920 (1993).  Federal habeas corpus review is available only "where the deprivation of rights is such that it necessarily impacts the fact or length of detention."  Leamer v. Fauver, 288 F.3d 532, 540 (3d Cir. 2002).

The alleged unconstitutional due process violations by FCI-Allenwood officials occurred during the course of an institutional disciplinary proceeding.  Since the internal disciplinary hearing resulted in the Petitioner's being sanctioned by the DHO to a loss of good time credits which extended the length of Galab's incarceration, his present due process claims are properly raised before this Court.

Respondent seeks dismissal of the petition on the grounds that Galab was afforded adequate due process, the DHO satisfied the required evidentiary standard, non-excessive sanctions were imposed, and the prisoner's claim that the disciplinary proceedings infringed his First Amendment rights is not properly asserted in a § 2241 petition.

**First Amendment**

Petitioner asserts in part that the Code 297 disciplinary charges constituted a violation of his First Amendment right to exercise his religious beliefs. This claim does not maintain that either the fact or duration of his confinement was adversely impacted by the violation of his First Amendment rights as contemplated under Preiser, Leamer, and Telford. Thus, said argument is not properly raised in a § 2241 federal habeas corpus petition. Accordingly, Galab's First Amendment claim will be dismissed without prejudice. The Petitioner, if he so chooses, may reassert his freedom of religion argument in a properly filed civil rights complaint.

**Due Process**

The Fourteenth Amendment of the United States Constitution provides in pertinent part: "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."  The Supreme Court has mandated a two-part

6

analysis of a procedural due process claim: first, "whether the asserted individual interests are encompassed within the . . . protection of 'life, liberty or property[,]'" and second, "if protected interests are implicated, we then must decide what procedures constitute 'due process of law.'" Ingraham v. Wright, 430 U.S. 651, 672 (1977).  If there is no protected liberty or property interest, it is obviously unnecessary to analyze what procedures were followed when an alleged deprivation of an interest occurred. Liberty interests protected by the Fourteenth Amendment may arise either from the Due Process Clause itself or from state law.  Meachum v. Fano, 427 U.S. 215, 223-26 (1976).

In Wolff v. McDonnell, 418 U.S. 539, 563-73 (1974), where the plaintiffs were deprived of good time credits as a severe sanction for serious misconduct, the Supreme Court held that such inmates have various procedural due process protections in a prison disciplinary proceeding.  The Supreme Court recognized in Wolff that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply."  Id. at 556.  Nonetheless, the Court held that a prisoner facing serious institutional sanctions such as a loss of good time credits is entitled to some procedural protection before penalties can be imposed.  Id. at 563-71.

Wolff set forth five requirements of due process in a prison disciplinary proceeding:  (1) the right to appear before an impartial decision-making body; (2)

7

twenty-four hour advance written notice of the charges; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; (5) a written decision by the factfinders as to the evidence relied upon and the rationale behind their disciplinary action. Id. An additional procedural requirement was set forth in Superintendent, Massachusetts Correctional Inst. at Walpole v. Hill, 472 U.S. 445, 453-56 (1985). In that case, the Court held that there must be some evidence which supports the conclusion of the disciplinary tribunal. The Court of Appeals for the Third Circuit in Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir. 1992), thereafter recognized that the above due process requirements must be satisfied in a prison disciplinary hearing.

In Sandin v. Conner, 515 U.S. 472, 480-84 (1995), the United States Supreme Court reiterated that the Wolff due process safeguards must be provided when, as in the instant case, the challenged disciplinary proceeding results in a loss of good time credits. See also Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991) (a federal prisoner has a constitutionally protected liberty interest in good time credit); Von Kahl, 855 F. Supp. at 1417. In conclusion, since Galab was undisputably sanctioned to a loss of good time credits, his allegations of denial of due process

relating to his underlying disciplinary proceeding must be reviewed under the Wolff and Hill standards.

As noted above, Wolff requires in part that an inmate accused of a disciplinary infraction be provided with twenty-four (24) hour advance written notice of the charges against him. Galab raises no claim that the advance notice mandate of Wolff was violated. This Court's independent review of the record likewise supports the conclusion that Petitioner received proper advance written notice of the charges against him. There is also no contention or basis in the record establishing that the factfinder, DHO Bittenbender, failed to issue a written decision. On the contrary, a copy of Bittenbender's decision has been submitted by the Respondent. See Record document no. 9, Exhibit 1, Attachment E. Consequently, both of those Wolff procedural safeguards were satisfied.

Petitioner likewise does not contend that he requested and was denied assistance from an inmate representative. Galab also makes no claim that he was denied the opportunity to present witnesses or documentary evidence. Accordingly, a discussion as to whether those Wolff procedural prongs were satisfied is also not warranted.

The remaining Wolff safeguards require the factfinder to issue a written decision outlining the evidence relied upon and the rationale behind the disciplinary action. Wolff also requires that an inmate must be afforded the opportunity to appear

before an impartial decision maker.  As noted earlier, it is undisputed that the DHO issued a written decision.  Petitioner also does not claim that DHO Bittenbender was biased.  Accordingly, his present due process claims are best described as challenges to the DHO's determination that the charged conduct was a violation of Code 297.

The due process issues in the present case concern Petitioner's arguments that:  (1) The Noble Qur'an was not a banned publication; (2) he was never given prior notice of Code 297; and (3)  his actions did not constitute serious abuse under Code 297.

**The Noble Qur'an**

Galab contends that he never had notice that The Noble Qur'an had been banned by the BOP.  His petition indicates that the BOP had not issued any prohibition against said publication.  Moreover, even if the book had actually been banned,  "FCI-Allenwood made no effort to inform inmates that it [The Noble Qur'an] was prohibited."  Record document no. 1, ¶ 14.

According to the response, The Noble Qur'an "is not permitted by the BOP because it is found to violate the ideologies of other religions and preaches violence." Record document no. 9, p. 4.  However, the Petitioner has submitted evidence that a copy of  The Noble Qur'an is included within the inventory of the FCI-Allenwood Chapel library.  See Record document no. 18, Exhibit D.  The Respondent counters that "the DHO did not find Galab guilty of *ordering a prohibited book* but found that

he improperly used the telephone to order books without going through the proper procedure for having books mailed to him in the institution." Record document no. 19, p. 7. Respondent adds that whether or not the book was prohibited is irrelevant.

This Court disagrees with the Respondent's determination of irrelevance. We first note that the Respondent's initial response clearly indicated that The Noble Qur'an was a prohibited publication. Second, the DHO's written decision which is the basis of this action also clearly lists the finding that The Noble Qur'an is a prohibited publication by the BOP as being inculpatory and corroborating evidence. See Record document no. 9, Exhibit 1-E.

Petitioner has presented evidence which calls into question a material determination made by DHO Bittenbender, namely that The Noble Qur'an was a prohibited publication. This conclusion arguably warrants a finding that the DHO's written decision was based upon an inadequate rationale and evidence as contemplated under Wolff and also partially undermines the Respondent's conclusion that the DHO's decision was supported by some evidence as required under Hill.

**Notice**

The DHO also found that Galab violated Code 297, which is a high security level telephone abuse violation. See 28 C.F.R. § 541.13 (Table 3). Galab states that his Inmate Handbook, which is dated May, 2003, contains no mention of Code 297 and that no change sheet regarding Code 297 was ever posted in the prison law

11

library.[2]  As a result, Petitioner asserts that he was never given proper notice of Code 297.

According to the Respondent,  Code 297 was added to the BOP's prohibited acts code in November, 2000 and is available to inmates through the FCI-Allenwood law library.  See Record document no. 9, p. 3, n. 2.  The Respondent does not respond to Petitioner's averment  that although Code 297 was enacted in November, 2000 it was not listed in the May, 2003 Inmate Handbook which he received upon his arrival at FCI-Allenwood in February, 2004.

Second, Galab contends that, unlike other BOP disciplinary code modifications, Code 297 was not posted on a change sheet in the prison's law library.  This argument was also not specifically addressed by the Respondent.  Although these two notice-related contentions have not been rebutted during the course of this action, the Respondent indicates that both of those arguments are precluded from consideration because at no time during the disciplinary proceedings did "Galab raise any procedural issues or claim that he did not have sufficient notice of a Code 297 violation."  Id. at p. 11.  This Court agrees that, based upon a review of the record, especially Galab's petition, there is  no indication that Petitioner ever raised the notice issues pertaining to Code 297 before DHO Bittenbender.  Furthermore, even if those

---

[2]  Galab explains that changes to the BOP's disciplinary code are usually posted as a "change sheet" in the prison law library.

12

two arguments were properly asserted, they do not appear to be of the magnitude required to constitute a Wolff violation.

Galab's next argument asserts that the charged conduct did not rise to the level of abuse for purposes of Code 297.  Code 297 states as follows, "Use of the telephone for abuses other than criminal activity (e.g., circumventing telephone monitoring procedures, possession and/or use of another inmate's PIN number; third-party calling; third-party billing; using credit card numbers to place telephone calls; conference calling; talking in code."  Record document no. 9, Exhibit 1-F, p. 24. DHO Bittenbender's written decision generally found the "charge to be substantiated at the High Severity level due to the manner in which the books were being arranged to be sent into the institution."  Id. at Exhibit 1, Attachment E, ¶ III.

The response indicates that Galab's placement of phone calls to arrange for the purchase of copies of the Qur'an pertaining to different ideologies of the Muslim religion which would be given to other inmates threatened institutional security because it bypassed the prison's telephone and mail monitoring procedures and "detracted from the intent" of the BOP's telephone policy and thus, violated Code 297.  Record document no. 9, p. 6.

The determinations rendered in a disciplinary hearing are not arbitrary or capricious if there exists a basis in fact to support a disciplinary hearing officer's findings.  Edwards v. White, 501 F. Supp. 8 (M.D. Pa. 1979).  In the present case,

Galab freely admits that he employed a telephone to order copies of the Qu'ran including the <u>The Noble Qur'an</u>. Petitioner also acknowledges that these books were to be used by other prisoners. Respondent has submitted an undated two-sentence memorandum from Chaplain Beadle to DHO Bittenbender stating that <u>The Noble Qur'an</u> was not allowed in the institution because it was not a faithful translation. <u>See</u> Record document no. 9, Exhibit 1-D.

It is initially noted that the alleged misconduct by Petitioner was discovered via the prison's telephone monitoring procedures. Second, the challenged publications were prevented from entering the prison by the FCI-Allenwood mail monitoring procedures. It also noted that the Petitioner was not charged with talking in code or attempting to obtain the books by employing another inmate's identity. Galab also readily admitted that he employed the telephone in an effort to obtain the publications.

This is simply not a case where a prisoner was clearly attempting to secretly introduce prohibited materials into the prison. On the contrary, with the exception of his failure to obtain prior permission from the Chaplain, the Petitioner attempted to have the publications at issue mailed to him through normal channels. More importantly, this Court's review of Code 297 does not clearly establish that said regulation was formulated to prohibit the type of conduct undertaken by Galab. Rather Code 297 appears to be directed to actual telephone abuse, i.e., third party

14

calling, talking in code.  There appears to be no basis for a finding that Galab was attempting to circumvent the prison's telephone monitoring procedures as described in Code 297.

The DHO's written findings note that Petitioner failed to follow the proper procedure for donating books to the Chaplain, and because the books ordered by Galab were admittedly intended for the use of other prisoners without staff authorization, they were properly considered to be contraband under BOP regulations.[3]  The findings as to contraband are arguably valid and sufficient under Hill.  However, as previously noted, the DHO's written decision is arguably insufficient with respect to the findings that The Noble Qur'an was a prohibited publication.  In addition, based upon a careful review of DHO Bittenbender's written decision, it fails to adequately explain how the conduct attributed to the Petitioner is encompassed within the actions prohibited under the charged offense, Code 297.

Admittedly, it does not appear that this defense was specifically raised during the course of the disciplinary hearing.  Nonetheless, the DHO was required, and failed to sufficiently provide a rationale or adequate explanation as to why the

---

[3] While it is unclear as to why Petitioner would order different versions of the Qur'an, there is no indication that said action was the result of an improper motive.

15

actions admittedly undertaken by the Petitioner were within the scope of activity prohibited under Section 297, a high security level violation .[4]

**Conclusion**

By presenting evidence showing that a copy of The Noble Qur'an is included within the inventory of the FCI-Allenwood Chaplain's library, Galab has presented competent evidence establishing that The Noble Qur'an was not a banned publication and thereby calls into question at least a portion of the DHO's factual findings.

Second, while Galab may not have gone through the proper channels in ordering the publications at issue, a review of the DHO's written decision does not satisfy the government's burden of showing that the evidence presented at Galab's disciplinary hearing was sufficient under Hill to establish that Petitioner's admitted conduct constituted a serious level violation of Code 297. The petition for writ of habeas corpus will be granted. The BOP will be directed to expunge the finding of guilt rendered at Petitioner's November 10, 2005 FCI-Allenwood disciplinary hearing and restore the eighty-seven (87) days of good conduct time credit disallowed or forfeited as a result of said decision.

---

[4] In addition, the determination that the prison's mail monitoring process was bypassed does not state a violation of Code 297 and appears to be undermined by the fact that the publications were confiscated upon their entrance into the prison.

16

Finally, based upon this Court's review of the record, there is no basis for the imposition of Rule 11 sanctions against the Respondent.  As previously, noted Petitioner has filed a motion asserting that the imposition of sanctions against Respondent's counsel is appropriate because the response falsely asserts that <u>The Noble Qur'an</u> has been prohibited by the BOP.   The motion has been fully briefed by the parties.

Respondent's counsel clearly makes the argument that <u>The Noble Qur'an</u> was considered to be contraband by federal correctional officials.  A brief memorandum by the FCI-Allenwood Chaplain to that effect has been made  part of the record.   While Petitioner has presented evidence to the contrary,  since the Respondent's argument was based upon factual evidence and representations provided by FCI-Allenwood correctional staff , there is no basis for the imposition of sanctions against Respondent's counsel.  The motion for sanctions will be denied.  An appropriate Order will enter.

    s/ James F. McClure, Jr.  
JAMES F. McCLURE, JR.  
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

FAYSAL GALAB, :
:
      Petitioner :
:
    v. :   CIVIL NO. 4:CV-06-1027
:
KAREN HOGSTEN, :   (Judge McClure)
:
      Respondent :

## **ORDER**

April 26, 2007

In accordance with the accompanying Memorandum**, IT IS HEREBY**

**ORDERED THAT:**

18

1. The petition for writ of habeas corpus is GRANTED in part.

2. Petitioner's claims of First Amendment violation are dismissed without prejudice.

3. The Federal Bureau of Prisons is directed to expunge the finding of guilt rendered at Petitioner's FCI-Allenwood disciplinary hearing of November 10, 2005 and restore the eighty-seven (87) days of good conduct time disallowed or forfeited.

4. The Federal Bureau of Prisons is directed to restore Galab's lost telephone and visitation privileges.

5. Petitioner's motion for sanctions (Record document no. 18 ) is DENIED.

6. The Clerk of Court is directed to CLOSE the case.


    s/ James F. McClure, Jr.
JAMES F. McCLURE, JR.
United States District Judge